IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LOJY AIR COMPANY**, an Egyptian Corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**GLOBAL FINANCIAL & LEASING, INC.**, an Oregon corporation, and **RICHARD KEITH WARD**,<br><br>　　　　　Defendants. | Case No. 3:17-cv-920-YY<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Youlee Yim You issued Findings and Recommendation in this case on January 10, 2022. Judge You recommended that this Court grant Defendants' motion to enforce settlement.

Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

PAGE 1 – ORDER

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Plaintiff timely filed an objection, to which Defendants timely responded. Plaintiff objects to the portion of the Findings and Recommendation concluding that the parties reached an enforceable settlement agreement and recommending that the Court grant Defendants' motion. Plaintiff argues that no meeting of the minds occurred on all material terms of the purported settlement agreement and that no enforceable settlement agreement was reached. The Court has reviewed the issue *de novo* and declines to adopt the legal conclusions of the Findings and Recommendation.

The Court adopts the Findings of Fact in the Findings and Recommendation. As described by Judge You, after Plaintiff settled a lawsuit with Defendants, Defendants allegedly defaulted on the settlement and Plaintiff filed this suit seeking $750,000. Defendants then made an offer to Plaintiff to settle this dispute for $10,000 "payable within 15 days of execution of a settlement agreement and *release of Defendants*." ECF 47 at 5 (Defs. Ex. 101 at 2) (emphasis

added). Plaintiff and his attorney discussed Defendants' settlement offer and precarious financial situation, and the Court agrees and finds that the evidence supports the conclusion that Plaintiff eventually agreed on January 9, 2019 to accept $10,000. The evidence, however, does not show that Plaintiff ever agreed to release Defendants. When Plaintiff's counsel conveyed Plaintiff's agreement to the settlement, counsel conveyed that Plaintiff agreed to accept $10,000 without mentioning any release. In response, Defendants' counsel again emphasized the release clause.

As of January 9, 2019, there was no enforceable settlement agreement between the parties because the parties did not have a meeting of the minds with respect to all of the material terms. The original offer by Defendants included the key terms of a $10,000 payment *and a release* of Defendants. Plaintiff never accepted that offer. At most, Plaintiff accepted the $10,000 but did not accept the release clause. The parties did not discuss the parameters of the release or come to the same understanding of its meaning and thus did not have a meeting of the minds on this material term. *See, e.g.*, *Kaiser Found. Health Plan of the Nw. v. Doe*, 136 Or. App. 566, 575 (1995) (looking at the parties' objective manifestations to see if they agreed upon the meaning of a release clause and thus had a meeting of the minds).

Defendants argue in response to Plaintiff's objections that the release clause was *not* a material term, but the contemporaneous correspondence belies that assertion. The release clause was repeatedly emphasized by Defendants and repeatedly added back into the contract after Plaintiff removed it. "A term is 'material' to an enforceable agreement when it goes to the substance of the contract and, if breached, defeats the object of the parties in entering into the agreement." *Johnstone v. Zimmer*, 191 Or. App. 26, 34 (2003). "A term may be material in one situation and immaterial in another, depending on the specific facts and circumstances." *Reed v. Ezelle Inv. Props. Inc.*, 353 F. Supp. 3d 1025, 1033 (D. Or. 2018). A key objective for

Defendants in entering a settlement was getting a release of all claims by Plaintiff. Under the circumstances of this case, the release clause was material.

The Court next considers whether at any later point the parties entered into an enforceable settlement agreement. Defendants later sent a written settlement agreement draft that included a release clause. On February 7, 2019, Plaintiff refused to sign the draft with the release clause. Plaintiff also instructed his counsel at that time that he refused to settle the entire case for only $10,000. Plaintiff stated that he would only settle the entire case for $150,000 and for $10,000 he would "issue the agreement." The next day, Plaintiff sent his counsel a draft proposed settlement agreement that removed all clauses except the payment clause and the clause establishing that Plaintiff will dismiss this lawsuit. The payment clause, however, included only a $10,000 payment, not a $150,000 payment. Thus, although Plaintiff expressly instructed counsel to inform Defendants that Plaintiff would only settle for $150,000 and for $10,000 would enter into the agreement, the draft proposed agreement that Plaintiff provided included only the $10,000 payment. On February 14, Plaintiff sent his attorney a proposed revised settlement agreement, which followed the draft that Plaintiff had previously sent and contained only the $10,000 payment clause and the dismissal clause. Plaintiff stated that it is the only agreement he would sign, "no more no less." Plaintiff's counsel then forwarded this revised agreement to Defendants and did not say anything regarding a $150,000 settlement.

Defendants accepted the removal of all clauses except the release clause, re-inserted that clause, and returned a revised settlement agreement to Plaintiff on February 19, 2019. That same day, Plaintiff sent a "counter settlement" to his attorney to send to Defendants. This proposed settlement agreement again did *not* include a release and only included the payment and dismissal clauses. On February 21, Plaintiff's attorney sent Plaintiff another revised version that

PAGE 4 – ORDER

again had the release clause re-inserted. Plaintiff refused to accept the revised settlement agreement. Counsel for Defendants eventually stated on March 12 that Defendants would sign the settlement agreement without the release clause, as proposed by Plaintiff on February 15, 2019.

Plaintiff's counsel did not convey Plaintiff's February 7th refusal to settle the entire case for $10,000 and apparent offer to settle the case for $150,000, with $10,000 to enter into the agreement. Defendants continued to believe that Plaintiff was in general agreement to settle the entire case for only $10,000, albeit the parties were still negotiating the release clause. Even assuming that Plaintiff's counsel did not have actual authority as of February 7th to settle for only $10,000, which is unclear based on Plaintiff's equivocal correspondence—on February 7th revoking settlement authority for the $10,000 amount and on February 8th proposing a settlement agreement for only $10,000—Plaintiff's counsel may have had apparent authority.

Retaining an attorney, however, is not, by itself, sufficient to create apparent authority to enter into a binding settlement agreement. *See Johnson v. Tesky*, 57 Or. App. 133, 137-38 (1982). Authorizing negotiations with an opposing party also does not, on its own, create apparent authority to approve a settlement agreement. *Id.* at 136-37. In this case, however, Plaintiff authorized his attorney to accept the $10,000 and enter into the settlement agreement. In doing so, that created counsel's authority with respect to the terms of the settlement agreement. *See Kaiser Found.*, 136 Or. App. at 574 ("In this case, defendant authorized more than just negotiations; when Kaplan conveyed the offer to her, she told him to accept it. . . . [A]t the very least, Kaplan had apparent authority to settle defendant's claim on her behalf, and Kaplan accepted the arbitration provision as part of the settlement."). Thus, even if Plaintiff revoked counsel's actual authority to accept $10,000, counsel's apparent authority remained.

Because Plaintiff's counsel had at least apparent authority to settle the case for $10,000, when he conveyed Plaintiff's draft of the settlement agreement to Defendants on February 15, 2019, that was a counteroffer. Defendants, however, responded with another counteroffer by submitting a revised version of the agreement on February 19, which Plaintiff rejected and further countered. Defendants responded to Plaintiff's draft agreements with versions that had releases. No party ever accepted the other party's version. Thus, no party ever accepted an offer, or counteroffer, made by the other party. Defendants later, on March 12, 2019, attempted to accept Plaintiff's February 15th counteroffer by stating that Defendants now would sign that version of the settlement agreement. Defendants, however, had the opportunity to accept that offer and chose not to do so. Instead, Defendants responded with a counteroffer by returning a revised version of the settlement agreement with a release clause included. Returning a contract with a term added or deleted is a rejection and counteroffer, not an acceptance and formation of a contract. *See, e.g.*, *Reed*, 353 F. Supp. 3d at 1033 ("Ezelle did not accept Reed's offer, but instead rejected it and made a counteroffer by returning the Proposed Settlement Agreement with the confidentiality clause crossed out.").

Defendants lost the opportunity to accept Plaintiff's February 15, 2019 counteroffer when Defendants countered that offer, and Defendants could not later go back and accept that counteroffer. *See, e.g.*, *Collins v. Thompson*, 679 F.2d 168, 171 (9th Cir. 1982) ("Generally, rejection or counteroffer terminates the power to accept the previously-made offer."); Restatement (Second) of Contracts § 39 (1981) ("An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree."). On March 12, 2019, there was no pending counteroffer by Plaintiff for Defendants to accept and Defendants could not go back

and accept the previous counteroffer of February 15, 2019. Thus, there was no offer and acceptance, and there was no enforceable settlement contract was made between the parties.

The Court ADOPTS IN PART the Findings and Recommendation (ECF 54). The Court adopts the Findings of Fact. The Court, however, declines to adopt the Conclusions of Law. For the reasons discussed in this Order, the Court DENIES Defendants' Motion to Enforce Settlement (ECF 26).

**IT IS SO ORDERED.**

DATED this 22nd day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge